ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| RAFAEL L. ARRILLAGA REYES, FRANCISCO A. ARRILLAGA REYES<br><br>Parte Peticionaria<br><br>Ex Parte | TA2026CE00521 | *Certiorari,* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Sala: 3005<br><br>Caso Núm.: TJ2024RF00174<br><br>Sobre: Declaración de Incapacidad y Nombramiento de Tutor |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 29 de abril de 2026.

Compareció ante este Tribunal la parte peticionaria, los Sres. Rafael Luis y Francisco Antonio, ambos de apellidos Arrillaga Reyes (en adelante, "hermanos Arrillaga Reyes" o "Peticionarios"), mediante un recurso de *certiorari* y una solicitud de auxilio de jurisdicción presentados el 28 de abril de 2026. Nos solicitaron la revocación de la *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, "TPI"), el 31 de marzo de 2026 y notificada el 1 de abril del mismo año.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable, prescindimos de la comparecencia de la Oficina del Procurador General y la del Sr. Víctor Arrillaga Reyes, al amparo de la Regla 7(B)(5) del Reglamento de este Tribunal[1], y por los fundamentos que expondremos a continuación, se *deniega* la expedición del auto de *certiorari* ante nos.

**I.**

El caso ante nuestra consideración tuvo su origen el 2 de noviembre de 2024, cuando los hermanos Arrillaga Reyes presentaron una "**Petición**

---

[1] *Véase, Regla* 7 (B)(5) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re* Aprob. Enmdas. Reglamento TA, 2025 TSPR 141, pág. 15, 216 DPR __ (2025).

**de Declaración de Incapacidad, y Nombramiento de Tutor**" para su madre, la Sra. Marisol Reyes Gómez. Tras múltiples incidencias procesales impertinentes a la controversia que nos ocupa, el 13 de agosto de 2025, el TPI emitió *Sentencia* mediante la cual, luego de aquilatar la prueba presentada por las partes, declaró incapaz a la señora Reyes Gómez para regir sus bienes y persona, al tiempo que designó al copeticionario, Sr. Rafael Luis Arrillaga Reyes, como su tutor a todos los fines y con las obligaciones y responsabilidades que exige la ley.

Como parte de la misma, el foro a quo ordenó al tutor la consignación de una fianza ascendente a $1,000.00 para asegurar su desempeño y resultado de su gestión. De igual manera, le impuso la obligación de rendir un informe anual donde se detallen los ingresos percibidos por la incapaz y todos los gastos. Asimismo, le requirió la presentación de inventario de los bienes de la incapaz en el término de veinte (20) días. Así las cosas, el 26 de agosto de 2026, el tutor consignó la suma impuesta de fianza.

Varios meses más tarde, y luego de la concesión de una prórroga, el tutor presentó el detalle de los bienes de la señora Reyes Gómez y evidencia de cierta gestión que efectuó como parte del cumplimiento con lo requerido por el TPI en la *Sentencia*. El 17 de octubre de 2025, el Ministerio Público presentó un "**Informe Fiscal en Cumplimiento de Orden**" mediante el cual solicitó que el tutor proveyera la información de ciertos certificados de ahorro que detalló como parte de los activos de la incapaz para así poder estar en posición de emitir una recomendación final sobre dichas cuentas. Igualmente, el Ministerio Público solicitó que se le ordenara al tutor a cancelar el Certificado Núm. MYN502093 en la institución TOLIC y el Certificado Núm. 01-6423105 en Nationwide y proceder a consignar la totalidad en el Tribunal en una cuenta a nombre de la incapaz. Igualmente, peticionó que se le requiriera al tutor a cerrar una serie de cuentas de ahorros y cheques en el Banco Popular de Puerto Rico, First Bank y la Cooperativa La Puertorriqueña. Finalmente, solicitó que se le ordenara al tutor a que los ingresos de renta que recibía la incapaz fueran depositados en la misma cuenta en la que ésta recibe el seguro social y que se lleven a

cabo los trámites bancarios necesarios para que se eliminara de dicha cuenta a cualquier otra firma autorizada que no sea la incapaz, para que dicha cuenta únicamente pueda ser manejada por el tutor, ordenándose la cancelación de tarjetas de débito o aplicaciones de pago que pudieran existir a nombre de terceras personas.

El 4 de enero de 2026, el tutor presentó una "**Moción en Cumplimiento de Orden**", a través de la cual presentó documentación adicional sobre los bienes de la incapaz y expuso que existían tres (3) certificados de depósito del Banco Popular, cuyas cuentas terminaban en 5373, 5374 y 5375, que estaban a nombre de la incapaz pero que presuntamente pertenecían a la Sucesión de Rafael Francisco Arrillaga Herrero, padre de los Peticionarios. Igualmente, sostuvo que, al momento de la muerte de Rafael Arrillaga Herrero en enero de 1988, la señora Reyes Gómez reunió el dinero producto del pago de los seguros de vida del causante (en ese entonces $60,000.00) y lo depositó en varios instrumentos de inversión y que desde 1988 hasta el presente la información recibida por el tutor de su madre era que ese dinero pertenecía a los tres hermanos.

En lo relativo a las certificados de ahorro de TOLIC y Nationwide, argumentó que no procedían cerrarse hasta que se cumpliera su madurez y que ambas cuentas fueron abiertas a nombre de la incapaz y ya ambas instituciones estaban conscientes de que a ésta se le había designado a un tutor legal. Informó, además, que las cuentas que el Ministerio Público solicitó fueran cerradas, solo una estaba en proceso para hacerlo y las otras dos (2) ya había sido cerradas. Finalmente, expuso el tutor que la cuenta en donde se recibía el pago del seguro social de la señora Reyes Gómez se utilizaba para completar el pago del hogar de envejecientes, se realizaban pagos de gastos incidentales de la incapaz y se utilizaba para el mantenimiento de una propiedad arrendada de ésta. Por tanto, solicitó que se mantuviera dicha cuenta abierta para tener flexibilidad en utilizarla.

En reacción, el Ministerio Público presentó otro "**Informe Fiscal en Cumplimiento de Orden**" (en adelante, "Segundo Informe Fiscal") por medio de la cual sostuvo que conforme el Artículo 6 de la Ley Núm.3-2004,

conocida como la "Ley Disponiendo sobre los Fondos Recaudados en las Secretarías del Tribunal de Primera Instancia por Concepto de Costas o Derechos, Embargo, Ejecución o Venta de Bienes por Orden Judicial", 4 LPRA secs. 396n, los fondos de todo incapacitado deberán ser depositados en una cuenta de ahorros especial a su nombre o en las instituciones bancarias designadas por el Juez(a) Presidente(a) o por el Director(a) Administrativo(a) de los Tribunales, según delegado por el primero. Sobre los tres (3) certificados de ahorro en el Banco Popular sobre los que se alegó que pertenecían a la Sucesión del Sr. Rafael Arrillaga Herrero, arguyó que de los documentos presentados de manera alguna establecía dicha alegación. Abundó que no se presentó evidencia sobre las pólizas de seguro que demostrara que la incapaz no era la beneficiaria de los tres seguros de vida y que por ello pudo cobrarlos cuando falleció su esposo. Asimismo, expuso que tampoco los miembros de la Sucesión del Sr. Rafael Arrillaga Herrero habían llevado a cabo un proceso de partición y liquidación de dicha sucesión que pudiera establecer dicha alegación. Incluso, advirtió que la incapaz también tenía participación en la sucesión de su esposo.

De otra parte, sostuvo que en cuanto al restante de los certificados de depósitos la ley disponía que los mismos fueran depositados, conforme la Ley Núm. 3, *supra*, sin tomar en consideración la acumulación de intereses en instituciones financieras privadas. Además, destacó que el tutor no presentó información bancaria que estableciera penalidad alguna ni incluyó los estados de cuenta, según fue ordenado por el TPI. En vista de lo anterior, reiteró su solicitud para que se le ordenara al tutor la cancelación de los certificados de ahorro y consignar la totalidad en las cuentas del Tribunal. Subrayó que ello aseguraba que el uso de los fondos de la incapaz para su beneficio y, a su vez, se facilitaba el manejo de las cuentas bancarias y los fondos depositados para la rendición futura de cuentas. Expuso, igualmente, que ello no impedía que posteriormente los miembros de la Sucesión del Sr. Rafael Arrillaga Herrero puedan establecer mediante un proceso de partición y liquidación de herencia que, en efecto, son los titulares en todo o en parte de los fondos de los certificados. Además,

expresó que aunque los ingresos que generaba la incapaz y los ingresos por renta informados eran suficientes para cubrir los gastos que también fueron informados, en caso de que la señora Reyes Gómez requiriera de fondos adicionales para gastos imprevistos, el tutor podría presentar posteriormente una solicitud de retiro de fondos incluyendo las justificaciones correspondientes.

Finalmente, detalló que los ingresos del seguro social se recibieran en la cuenta en que se estaban depositando y que los ingresos de renta que recibía la incapaz se depositaran en la cuenta que terminaba 6778 del Banco Popular, así como que esta última cuenta se mantuviera a nombre de los hermanos Arrillaga Reyes. El 10 febrero de 2026, notificada ese mismo día, el foro recurrido emitió una *Orden* a través de la cual declaró "Ha Lugar" el *Segundo Informe Fiscal* y le ordenó al tutor a cumplir con los solicitado por el Ministerio Público en el plazo de veinte (20) días.

El 16 de marzo de 2026, el tutor compareció mediante "**Escrito en Cumplimiento de Orden y Solicitud de Reconsideración**" mediante la cual expuso las razones por las cuales estaba en desacuerdo con la Orden del TPI y solicitó la reconsideración de la misma. El 25 de marzo de 2026, el foro de instancia dictó una *Orden* requiriéndole al Ministerio Público a exponer su posición. Luego de que el Ministerio Público fijara su postura, el TPI emitió la *Orden* recurrida y le concedió al tutor un plazo de veinte (20) días para proceder a cancelar todos los certificados de ahorro y consignara la totalidad restante en el Tribunal en una cuenta a nombre de la incapaz.

Inconforme con dicha determinación, los Peticionarios presentaron el recurso que nos ocupa y mediante el mismo le imputaron al foro de instancia la comisión de los siguientes errores:

PRIMERO: Cometió error el Honorable Tribunal de Instancia al no conceder ningún valor a las determinaciones tomadas por la incapaz cuando aún gozaba de capacidad para regir sus bienes y persona, descartando sus decisiones en el manejo de su patrimonio y eliminando la presunción de capacidad que cobija a todo ciudadano.

SEGUNDO: Cometió error el Honorable Tribunal de Instancia al determinar que el Artículo 6 de la Ley Número 3 de 8 de enero de 2004 le exige a ordenar que todos los fondos en certificados de ahorro de la incapaz sean consignados en el Tribunal.

TERCERO: Incurrió en error la Sala de Instancia al declinar ejercer su discreción judicial y determinar que los fondos depositados en cuentas de ahorro debían retirarse y consignarse en el Tribunal a pesar del costo económico que esto representa para la incapaz.

CUARTO: Incidió la Honorable Jueza del Tribunal de Primera Instancia al no permitir que el tutor ejerza sus funciones y cumpla a cabalidad sus obligaciones según estas están establecidas en el Artículo 164 del Código Civil.

## II.

### A.

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. 800 Ponce de León v. AIG, 205 DPR 163, 174 (2020); Mun. de Caguas v. JRO Construction, 201 DPR 703, 711 (2019). A pesar de ser un recurso procesal excepcional y discrecional, el tribunal revisor no debe perder de vista las demás áreas del derecho. Mun. de Caguas v. JRO Construction, *supra,* pág. 711.

Así, con el objetivo de ejercer de manera prudente nuestra facultad discrecional, es preciso acudir a lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40; Banco Popular de Puerto Rico v. Gómez Alayón, 213 DPR 314, 336 (2023). Esta norma cobra mayor relevancia en situaciones en las que no hay disponibles métodos alternos para asegurar la revisión de la determinación cuestionada. Íd. A esos efectos, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, limita la autoridad de este Tribunal de Apelaciones para revisar las órdenes y resoluciones interlocutorias que dictan los tribunales de instancia por medio del recurso discrecional del *certiorari*. En lo pertinente, la precitada disposición reglamentaria, *supra*, dispone que:

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de

relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable la justicia, al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. Íd.

Con el fin de que podamos ejercer de una manera sensata nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso, la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari*. BPPR v. SLG Gómez-López, 213 DPR 314, 336 (2023). En lo pertinente, la precitada disposición reglamentaria establece lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari*, o de una orden de mostrar causa:

A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. Íd.

Nótese que, distinto al recurso de apelación, el auto de *certiorari*, por ser un recurso discrecional, debe ser utilizado con cautela y por razones de peso. Pueblo v. Díaz de León, 176 DPR 913, 918 (2009). En ese sentido, el Tribunal Supremo de Puerto Rico reiteradamente ha indicado que la *discreción* significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. García v. Padró, 165 DPR 324, 334 (2005). También se ha definido como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". Banco Popular de Puerto Rico v. Gómez Alayon, *supra*, pág. 13. En otras palabras, el adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". Pueblo v. Ortega

Santiago, 125 DPR 203, 211 (1990). Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. SLG Flores, Jiménez v. Colberg, 173 DPR 843 (2008).

**B.**

Es harto conocido en nuestra jurisdicción que se presume la capacidad de la persona natural mayor de edad, de obrar por sí misma. "Contra esta presunción solo se admite la sentencia de incapacitación absoluta o de restricción parcial de la capacidad por las causas y la extensión que determina la ley". Art. 100 del Código Civil, 31 LPRA sec. 5601. Así pues, hasta tanto un tribunal competente, no disponga de su incapacidad, el adulto o menor emancipado, se presume capaz para todos los efectos legales. González Hernández v. González Hernández, 181 DPR 746, 759 (2011). Por tanto, es indispensable que en el proceso de declaración de incapacidad y nombramiento de un tutor se rebata dicha presunción de capacidad mental para obrar, regir su persona y administrar sus bienes. Íd.

Ahora bien, "la capacidad de obrar de la persona natural puede limitarse absoluta o parcialmente. En ambos casos procede el nombramiento de un tutor para que le asista en los actos ordinarios de la vida civil y la represente legalmente en las relaciones jurídicas en las que sea parte". Art. 101 del Código Civil, 31 LPRA sec. 5611. Por ello, la incapacidad se suple mediante la figura de la tutela. El Art. 122 del Código Civil, dispone sobre la tutela lo siguiente:

> La tutela confiere a una persona natural o jurídica la autoridad para representar y asistir a otra que, sin estar sujeta a la patria potestad, tiene restringida la capacidad de obrar por razón de su minoridad o por las causas que declara la ley.

> La tutela tiene por objeto la guarda y la representación de la persona incapaz y la administración de sus bienes, o solamente la administración de los bienes, según las limitaciones que determina la sentencia y las exigencias del régimen tutelar al que queda sometida.

> Las funciones tutelares constituyen un deber, se ejercen en beneficio del tutelado y están bajo la salvaguarda de la autoridad judicial. 31 LPRA sec. 5661

El tutor del menor o del incapaz tiene la obligación de:

(a) someterlo al tratamiento que requiere su condición;
(b) darle una carrera u oficio determinado, si ello no ha sido ordenado por los progenitores;
(c) procurar los rendimientos propios del patrimonio y colocarlos en inversiones seguras, después de cubrir las obligaciones de la tutela;
(d) proceder a la división de la herencia o de otros bienes que el tutelado posea en común con otros titulares;
(e) iniciar en nombre y en representación del tutelado toda acción legal en la que el tutor no tenga intereses encontrados; y
(f) realizar cualquier gestión que convenga al interés óptimo del tutelado y que agilice la atención de sus asuntos personales y económicos. Estas actuaciones están sujetas a las limitaciones que la ley dispone y a las medidas de control que establezca el tribunal. En caso de duda sobre el alcance de la gestión, la actuación del tutor se entiende limitada a los actos propios de un administrador. 31 LPRA sec. 5729.

Nombrado el tutor, la Ley Núm. 3-2004, *supra*, dispone lo siguiente:

> Los fondos de menores o **incapacitados**, salvo aquellos contra los cuales se gire habitualmente, <u>**serán** depositados</u> **por los(as) Secretarios(as) del Tribunal de Primera Instancia o por aquellos(as) otros(as) funcionarios(as) o empleados(as) designados(as) por el(la) Director(a) Administrativo(a) de los Tribunales para realizar funciones de recaudación, en una cuenta de ahorros especial a su nombre en la o las instituciones bancarias designadas por el(la) Juez(a) Presidente(a) o por el(la) Director(a) Administrativo(a) de los Tribunales por delegación de éste(a)**. La referida cuenta reflejará el montante depositado a nombre de cada menor o incapacitado en forma tal que permita el cómputo de los intereses devengados por cada uno, así como cualquier otro extremo que se disponga mediante reglamento. 4 LPRA sec. 396n (énfasis suplido).

### III.

En el presente caso, el Peticionario nos solicitó la revocación de la *Orden* del TPI mediante la cual se declaró "Ha Lugar" el S*egundo Informe Fiscal* y se le ordenó a cancelar todos los certificados de ahorro a nombre de la señora Reyes Gómez y consignar la totalidad restante en una cuenta del Tribunal a nombre de esta última.

Como señalamientos de error, los Peticionarios sostienen que el foro recurrido erró al: (1) determinar que procedía la cancelación de los certificados de ahorros de la incapaz y no tomar en consideración los actos ejecutados por ésta mientras disfrutaba de su capacidad mental; (2) concluir

que procedía la consignación de los fondos habidos en dichos certificados de ahorro, conforme lo dispone la Ley Núm. 3, *supra*; y (3) no permitir que el tutor ejerciera sus funciones y obligaciones del Artículo 164 del Código Civil, *supra*.

Tras una evaluación detenida del expediente ante nuestra consideración, concluimos que no se desprende del mismo que el foro *a quo* haya actuado de forma arbitraria, caprichosa, que haya abusado al ejercer su discreción o cometido algún error de derecho. Tampoco los Peticionarios demostraron que el foro de instancia actuó con prejuicio o cometiera un error manifiesto en su determinación. No vemos cómo las facultades del tutor, al amparo del Artículo 164 del Código Civil, *supra*, se van a ver menoscabadas o sean incompatibles con las disposiciones de la Ley Núm. 3-2004, *supra*, que dispone taxativamente la obligación de depositar los bienes de un incapaz en el Tribunal en una cuenta especial a su nombre. El hecho de que dichos fondos pudieran pertenecerle a la Sucesión del padre de los hermanos Arrillaga Reyes, la cual no está sujeta a un proceso de división o partición, tampoco es fundamento jurídico suficiente para dejar sin efecto el dictamen recurrido.

En suma, concluimos que de los autos no se desprende indicador alguno que requiera nuestra intervención con la determinación judicial recurrida y tampoco hallamos fundamento legal alguno que amerite la expedición del auto de *certiorari*, al amparo de la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

### IV.

Por los fundamentos que anteceden, los cuales hacemos formar parte íntegra de la presente *Resolución*, *denegamos* el auto de *certiorari* que nos ocupa y declaramos "No Ha Lugar" la solicitud de auxilio de jurisdicción presentada por los Peticionarios.

**Notifíquese inmediatamente.**

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones